1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| ABOLFAZL SOLEIMANI, | Case No.: 25-cv-3082-DMS-DEB |
|---|---|
| Petitioner, | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| CHRISTOPHER LAROSE, Warden of Otay Mesa Detention Center; SIDNEY AKI, San Diego Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); TODD LYONS, Acting Director of Immigration and Customs enforcement("ICE"); KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); PAMELA BONDI, Attorney General of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT. | |
| Respondents. | |

On November 10, 2025, Petitioner filed the present case with a request for an expedited hearing. On November 12, 2025, the Court issued an order directing Respondents to file a response to the Petition and giving Petitioner the opportunity to file

a reply. Respondents filed their return on November 17, 2025, and Petitioner filed his traverse on November 20, 2025. After reviewing the parties' briefs, the record, and the relevant case law, the Court grants the Petition.

Petitioner is an Iranian national who participated in the "Life, Women, Freedom" movement in Iran. (Decl. of Abolfazl Soleimani in Supp. of Pet. at 2, ECF No. 1-2.) As part of that movement, Petitioner participated in a protest over the murder of Mahsa Amini, who was arrested for not wearing her hijab and, while detained, was beaten to death by the guards. (*Id.*) After the protests, the government began a severe crackdown on the protestors. (*Id.*) Many were arrested, beaten during detention, and some died. (*Id.*) Petitioner's brother was detained after one of the protests and released after Petitioner's family posted an expensive bond, but Petitioner's family continued to be monitored by the authorities. (*Id.*) Eventually, Petitioner was arrested for a protest, beaten, and endured threats against his life. (*Id.*) Upon his release, Petitioner realized he was no longer safe in Iran and that his continued presence in the country would endanger his family. (*Id.*) As a result, Petitioner decided to flee to the United States and seek asylum here. (*Id.*)

Petitioner traveled to Mexico and applied for an appointment for entry via CBP One.[1] (*Id.* at 3.) At some point, the smugglers who were helping Petitioner told him he could no longer wait to enter the United States, and they forced him to cross the border at gunpoint. (*Id.*) Petitioner entered the United States on or about August 14, 2024, where he immediately surrendered to Customs and Border Protection. (*Id.*) He was detained for six days, and then sent to a detention center in Louisiana, where he remained until September 6, 2024, when he was released on parole pursuant to 8 U.S.C. § 1182(d)(5)(A).[2]

---

[1] CBP One is a mobile application that enables "aliens without appropriate documents for admission who seek to travel to the United States through certain southwest border land ports of entry (POEs), the ability to submit information through a module within the application instead of coming directly to wait at a POE." https://www.cbp.gov/document/fact-sheets/cbp-one-fact-sheet-english.

[2] This statute states: "The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such

(*Id.*, Ex. 1, ECF No. 1-3.)  Petitioner's "Interim Notice Authorizing Parole" states, "Your parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion.  ICE may also terminate parole on notice prior to the automatic termination date." (*Id.*)

After being released on parole, Petitioner relocated to Los Angeles.  (Soleimani Decl. at 3.)  He states that on June 6, 2025, before the one-year expiration of his parole, he and a friend were returning to their home from Home Depot.  (*Id.*)  Petitioner states they were stopped at a stop sign

> when a car suddenly stopped right in front of us blocking us from going any further.  The vehicle had no logo and we had no idea what was happening.  Armed men jumped out of the car.  Their faces were covered and they had their guns drawn pointing out of us.  [They] screamed at us to get out of the vehicle.  I had no idea who they were and what they wanted.

(*Id.*)  Petitioner states he was "instantly afraid for my life." (*Id.*)  "The masked gun men came to the car window and again screamed at us to get out of the vehicle.  I was frozen in fear.  Then they smashed the car windows and dragged us out of the car.  I had no idea what was going on."  (*Id.*)  The gunmen then "handcuffed [Petitioner] and took [him] to their unmarked car. … Once inside the car, [Petitioner] lost consciousness.  (*Id.* at 3-4.)  Petitioner states this whole incident "took less than a minute" and he thought he was going to die. (*Id.* at 4.)

When Petitioner woke up he was in a hospital bed with three armed officers surrounding him.  (*Id.*)  After being released from the hospital, Petitioner was taken to a detention facility, where he was held for five days.  (*Id.*)  While there, Petitioner did not

---

conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

receive any paperwork nor was he told why he was being detained. (*Id.*) As he states, "I was simply driving down the street and then, quite suddenly, I was surrounded by masked men, dragged out of my car, shackled and thrown into detention." (*Id.*) After being in the Los Angeles detention facility, Petitioner was transferred to Otay Mesa Detention Center, where he remains. (*Id.* at 5.)

As a result of the above facts, which Respondents do not dispute, Petitioner filed the present case alleging claims for unreasonable search and seizure in violation of the Fourth Amendment, unlawful detention in violation of the Administrative Procedures Act ("APA"), and a procedural due process claim under the Fifth Amendment. In their response to the Petition, Respondents assert the Court lacks jurisdiction to consider Petitioner's claims and Petitioner's detention is otherwise lawful.

On the jurisdiction issue, the Court has repeatedly considered Respondents' argument and rejected it. *See Jimenez Lopez v. Archambeault*, Case No. 25cv3029 DMS (BLM), ECF No. 7 at 3; *Vasquez Garcia v. Noem*, ___ F.Supp.3d ___, Case No. 25-cv-02180-DMS-MMP 2025 WL 2549431, at *3–4 (S.D. Cal. Sept. 3, 2025); *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, ECF No. 7 at 3-4. Based on the reasoning of those cases, the Court again rejects this argument.

The only other argument Respondents offer is that Petitioner is being lawfully detained pursuant to 8 U.S.C. § 1225. This argument is a non sequitur as Petitioner is not raising a claim that he is being detained in violation of that statute. Moreover, Respondents have not presented the Court with any evidence that Petitioner is being detained pursuant to that statute. Indeed, Respondents have failed to submit any evidence as to the basis for Petitioner's detention. Absent a claim under § 1225 or any evidence that § 1225 serves as the basis for Petitioner's detention, Respondents' argument is without merit.

On the claims Petitioner does raise, namely an unlawful search and seizure claim under the Fourth Amendment, an unlawful detention claim under the APA, and a procedural due process claim under the Fifth Amendment, Respondents' answer to the Petition is silent. By failing to respond to the claims actually asserted, Respondents have

conceded the claims.  *See Lansdown v. Bayview Loan Servicing, LLC*, No. 22-cv-00763-TSH, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023) (quoting *Lansdown v. Bayview Loan Servicing, LLC*, No. 22-cv-00763-TSH, 2023 WL 411348, at *4 (N.D. Cal. Jan. 25, 2023)) ("[F]ailure to respond in an opposition to an argument constitutes waiver or abandonment, and thus 'concedes the argument.'")  With that concession, and given the undisputed facts of this case, the Court grants the Petition.

Pursuant to Petitioner's request, and in light of the discussion above, the Court hereby declares Petitioner's detention unlawful and grants the petition for writ of habeas corpus.  Respondents shall release Petitioner immediately, and file a notice of compliance within ten days of this order being filed.

**IT IS SO ORDERED**.

Dated:  November 24, 2025

Hon. Dana M. Sabraw
United States District Judge

25-cv-3082-DMS-DEB